WARNOCK, MacKINLAY & CARMAN, P.L.L.C.
1019 South Stapley
Mesa, Arizona 85204
(480) 898-9239

J. Kent MacKinlay, No. 7204
Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| In re: | **Chapter 11** |
|---|---|
| | **Case No. 2-08-bk-09365** |
| RICHARD AND JULIANNA PINKSTON, husband and wife, | **DISCLOSURE STATEMENT FOR DEBTORS' FIRST AMENDED PLAN OF REORGANIZATION** |
| Debtor. | |

**I.     INTRODUCTION**

This disclosure statement is submitted by Richard and Julianna Pinkston ("Pinkston" or "the debtor") as debtor in possession herein, concurrent with submitting their First Amended Plan of Reorganization ("the Plan") to their creditors for acceptance. Pinkston has filed a Plan with the U.S. Bankruptcy Court for the District of Arizona ("the Court"), which has jurisdiction over this Chapter 11 bankruptcy case.

A copy of the proposed Plan is submitted herewith. All parties who receive this Statement preparatory to voting on the acceptability of the Plan should study the Plan carefully and should consult their counsel with regards to its impact on their legal rights, before voting on the Plan. In the event of any discrepancy between this Statement and the Plan, the terms of the Plan control.

Pinkston believes that, for the reasons set forth in this Disclosure Statement, the Plan represents the best possible return for creditors of the estate in the quickest possible time. Accordingly, Pinkston recommends that creditors vote to accept the Plan.

NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS

CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU.

PINKSTON IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH ALL SUCH INFORMATION IS ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE AND BELIEF. THE FINANCIAL INFORMATION PRESENTED HAS NOT BEEN AUDITED, AND IS BASED UPON PINKSTON'S OWN BOOKS AND RECORDS AND BUSINESS EXPERIENCE. THE COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, AND THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT MEANS ONLY THAT, IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS TO MAKE INFORMED DECISIONS WHETHER TO APPROVE OR REJECT THE PLAN.

The Plan will not become effective or binding upon any party in interest until it has been confirmed by the Court. The Bankruptcy Code requires that a Plan must be submitted to holders of claims against the debtors, certain of whom must be provided with an opportunity to vote on whether to accept or reject it. In addition, any solicitation of acceptances or rejections of the Plan must be accompanied by disclosure materials approved by the Court as containing "adequate information." "Adequate information" is described by the Code as information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, to enable a hypothetical reasonable investor typical of solicited claimants to make an informed judgment about the Plan and the acceptance or rejection thereof.

In short, creditors with allowed claims are entitled to vote on the Plan, and the party seeking approval of the Plan must provide those creditors with sufficient information so that they can have a meaningful vote. This is the purpose of this Disclosure Statement.

This Disclosure Statement must be approved by the Court prior to the debtor's soliciting acceptances of the Plan. The Court shall then set a hearing to consider confirmation of the Plan. At that time, creditors may vote on the Plan by mailing a ballot provided by Pinkston. In determining whether the Plan should be confirmed, the court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best

interests of creditors. The court will also receive and consider a ballot report prepared by Pinkston, or their agents, concerning the votes for acceptance or rejection of the Plan by the parties entitled to vote.

Acceptance of the Plan is sought only from those holders of claims which are "impaired" by the Plan: that is acceptance is solicited only from those creditors whose legal, equitable or contractual rights are altered by the Plan or who will not receive under the Plan the amount of their allowed claim in cash. Holders of claims which are not impaired under the Plan are deemed to have accepted the Plan pursuant to 11 U.S.C. 1126(f).

Section 1129(b) of the Code provides that, if the Plan is rejected by one or more impaired classes, the Plan, or modification thereof, may nevertheless be confirmed by the Court provided that the Court determines that the Plan does not discriminate unfairly and is fair and equitable with respect to the rejecting class or classes of claims impaired under the Plan. It is the intent of Pinkston to seek such confirmation by the Court in the event one or more impaired classes rejects the Plan.

**II.     HISTORY OF DEBTOR**

Richard Pinkston aged 48 and Julianna Pinkston aged 42, are husband and wife. They have 3 minor children. They reside in Simi Valley, CA. They filed for bankruptcy protection with this Court, because of the related bankruptcy of Stonecast Walls, L.L.C. ("Stonecast"), and because their affairs have been intertwined with those of Stonecast. Stonecast previously filed its own Chapter 11 petition with the Court under case number 2:08-bk-02473.

<u>West Coast Specialty Stone, Inc.</u>

Mr. and Mrs. Pinkston have operated a construction business in Southern California known as West Coast Specialty Stone, Inc. ("Westcoast"), for the past 15 years. That business has provided their livelihood. Westcoast's primary business is the installation of specialty stone facades on and about residential properties.

Westcoast reported on its 2007 income tax return, (the most recently filed) profits of $104,078 on sales of $1,539,269. Its sales for 2008 were $ 1,255,140.50.

<u>Stonecast Walls, LLC</u>

In 2002, Pinkston and two persons related to Pinkston by marriage, Terry Benton and Lance

1  Waite, organized an entity known as Stonecast Walls L.L.C. That entity operated in the construction
2  industry in metropolitan Phoenix. Stonecast was in the business of manufacturing and installing
3  custom perimeter walls for housing tracts.

Pinkston invested over $170,000 in capital in Stonecast, and loaned another $525,624 to that company. Pinkston (meaning in some cases Richard Pinkston only and in other cases both Richard and Julianna Pinkston) also guaranteed many of Stonecast's debts, in order to finance the acquisition of wall forms and other equipment by Stonecast.

Starting in 2006, the housing industry in metropolitan Phoenix, which is the basis of Stonecast's business, began a decline of historic proportions. When homebuilders stopped building their subdivisions, Stonecast had no new contract work to perform. It has had no work, and no income, since the second quarter of 2008. It has been forced to lay off all of its employees.

Pinkston and other members of Stonecast endeavored to prop up Stonecast by loaning their own funds to the company. However, Stonecast was unable to meet its obligations and was forced to file for Chapter 11 protection on March 11, 2008.

New Earth Systems

Richard Pinkston is involved in a California corporation known as New Earth Systems, Inc. ("New Earth"). He is a director of New Earth and the Pinkstons own 300,000 shares of that company. They also hold options to purchase another 750,000 shares.

New Earth was formed in 1997. It is based in St. George, Utah. It is an environmental technology company which focuses on recycling waste products into reusable commodities. It has developed a patented system to recycle plastic containers. It has recently commenced the use of that system on a commercial basis.

A copy of a projected balance sheet for New Earth, prepared by that company's management in mid-2008, is attached as Exhibit "A" hereto.

The company is a start up company, but Pinkston believe that it has great potential. It has approximately 50 shareholders, and has contributed capital in excess of $4,000,000.

Its shares are illiquid and could not be rationally sold under current market conditions. However, there has been a limited market for its shares in the past. For example:

Terry Benton, like Pinkston a member of Stonecast, also held stock in New Earth. He sold his 75,000 shares in December 2007, at a price of $1.65 per share, investing the proceeds into Stonecast.

### Tolteca Enterprises, LLC

Pinkston holds a 26% membership interest in Tolteca Enterprises, LLC, a California entity formed for the purpose of carrying out tourist services in Mexico. That entity is not currently active. It reported a loss of $6426 in 2007, the most recent year for which it filed a tax return.

### Conditions Causing Bankruptcy Filing

As noted above, Pinkston had guaranteed many of Stonecast's debts. When Stonecast was unable to stay current on those debts, the lenders commenced action against the Pinkstons on their guarantees. One of those lenders, Puget Sound Leasing, obtained judgment in King County, Washington, against the Pinkstons in the approximate amount of $92,000 by default.

Faced with a multiplicity of suits against them on their guarantees, Pinkstons were forced to seek bankruptcy protection themselves. They filed a Chapter 11 petition on July 25, 2008.

## III. POST-BANKRUPTCY DEVELOPMENTS

Pinkstons filed their first plan of reorganization on September 29, 2008. At that time, they believed that Stonecast Walls LLC would return to viability. Their original plan was based upon the concept of their recapitalizing Stonecast over a period of years, from funds derived from the sale of other assets, notably their shares in New Earth.

Since that time, the crisis in the home-building and construction industry which had caused Stonecast's own bankruptcy filing, has deepened, with no end in sight. Those conditions have likewise affected the business of West Coast Specialty Stone, LLC, which has been the basic support for the Pinkston family over the years. Finally, New Earth Systems' emergence into production has been slowed by financing issues.

Faced with these developments, it was apparent both that Stonecast would not return to viability in the foreseeable future, and that Pinkstons would be unable to realize fair value for the assets which they had intended to sell to recapitalize Stonecast . As a result, they withdrew their original plan. The present plan is based upon an orderly sale of Pinkston's assets, with the proceeds

to be applied on Pinkstons' own debts. Stonecast will be allowed to itself liquidate, under an amended plan filed by it in its own bankruptcy.

**IV.     SUMMARY OF PLAN OF REORGANIZATION**

Their plan of reorganization ("the Plan") divides Pinkston's creditors into six separate classes. Unless expressly stated in the Plan, distributions to the holders of allowed claims are considered to be in full satisfaction of such claims, including any interest which otherwise would have accrued thereon, costs and attorney's fees. No distribution will be made on any disputed claims, unless and until they become allowed claims.

The classes are as follows:

4.1     CLASS I. <u>Administrative Expenses.</u>  Administrative expense claims, which are approved by the debtor or by the court, along with any outstanding fees to the U.S. Trustee, shall be paid in full in cash within 30 days of the Effective Date, unless the creditor agrees to extended payment terms.

Pinkston believe that the only administrative expense claim payable by them will be the fees of their bankruptcy attorney, the amount of which is not expected to exceed $10,000.

4.2     CLASS II. <u>Tax Claims.</u>  Insofar as Pinkston is aware, they are current in all of their tax obligations. They will pay all taxes owed by them in future, as the same fall due. West Coast Specialty Stone, Inc., is currently in arrears of its payroll tax obligations, as a result of its bank account being garnished by a creditor.  That debt will be retired in the liquidation of West Coast.

4.3     CLASS III. <u>Comerica Bank</u> The debtors, together with co-debtors Stonecast Walls, L.L.C., Mr. and Mrs. Terry Benton, and Mr. and Mrs. Lance Waite guaranteed as SBA loan of $525,000 from Comerica Bank to Stonecast.  The loan is secured by junior deeds of trust on the personal residences of each of the three guarantors.

The Pinkstons value their residence, at 3275 Faxton Court, Simi Valley, CA, at $560,000. That property is subject to two deeds of trust in favor of Bank of America, in the approximate total amount of $460,000.  Comerica Bank holds a third deed of trust in this property, to secure its loan of approximately $525,000 to Stonecast.

The claim of Comerica Bank, which is secured by a third deed of trust on the real property

at 3275 Faxton Court, Simi Valley, CA., shall be treated as secured in the amount of $100,000 and unsecured for the balance. Comerica Bank shall retain this collateral.

The secured portion of this claim shall be paid with interest at the rate of 5 % per annum, calculated from and after the Effective Date. The debtors shall pay monthly payments of interest only, commencing 30 days following the Effective date, and each month thereafter. Principal payments totaling $5000 or more shall be paid on or before the first, second, third, and fourth anniversaries of the Effective Date. The secured portion of this claim shall be paid in full on the fifth anniversary of the Effective Date, or earlier upon the sale or refinancing of the Faxton Court property. The secured portion of this claim may be prepaid in full or in part at any time.

The unsecured portion of this claim shall be paid in accordance with Class VI, pro rata with and at the same time as Class VI creditors.

4.4 CLASS IV. <u>Bank of America</u>. The two claims of the Bank of America secured by deeds of trust on the Faxton Court property shall be paid in accordance with the present terms of such loans, which are fully secured.

That claim of the Bank of America which is secured by a first deed of trust on a residential lot at 16656 Elgin Street, Gilbert, AZ, shall be treated as fully secured by such property. Such property shall be sold within 180 days of the Effective Date, or earlier upon court order, and this claim paid in full, failing which the collateral shall be conveyed to the Bank in full satisfaction of this claim.

4.5 CLASS V. <u>Administrative Convenience Class.</u> Each Class V claimant whose claim of under $1,000 is approved either by the debtor or by the court, shall have the following options:

(a) To elect to accept a cash sum equal to 30% of the amounts of such approved claim, thirty days following the Effective Date, in full satisfaction of such claim, or

(b) To accept payment in the same manner and on the same terms as Class VI claimants.

Such election shall be made by each such Class V claimant at the same time as such claimant casts its ballot to confirm or reject this Plan. In the event no such election is made by a

1  Class V claimant, such claimant shall be deemed to have elected treatment in accordance with
2  Option (b) hereinabove.

3  In addition, any Class VI claimant whose claim is in excess of $1,000.00, and whose
4  claim is approved either by the debtor or by the court, shall have the option of receiving the sum
5  of $300 in cash, 30 days following the Effective Date, in full satisfaction of such claim. Such option
6  must be exercised in writing at the time a ballot is cast to confirm or reject the Plan.

7  4.6  Class VI. <u>General Unsecured Creditors</u>. All other claims, not provided for
8  elsewhere, which are approved either by the debtor or by the Court, shall be treated as Class VI
9  claims. These creditors shall share, pro rata, in the proceeds of liquidation of all of the non-exempt
10 assets of the debtors.

**V.  MEANS FOR IMPLEMENTATION OF PLAN**

12 5.1  This Plan is a liquidating Plan. The debtors may sell any property in which they have
13 a statutory exemption, and may sell any other property having a value of $ 8000 or less, at any time
14 without Court approval. All other property of the debtors, including their interest in New Earth
15 Systems Inc, and all other entities in which they hold an ownership interest, their interest in acreage
16 in Cedar City, Utah, and their interest in the Gilbert lot over which Bank of America holds a deed
17 of trust, shall be sold only with Court approval following notice to all creditors

18 5.2  All of the proceeds of sale of non-exempt assets shall be deposited in an escrow
19 account, under control of the Court, and shall only be disbursed with court approval. The debtors
20 shall disburse the proceeds of liquidation of non-exempt assets, in accordance with the foregoing
21 provisions, within 90 days of receipt of any such proceeds, or at such alternative date or dates as the
22 Court may set.

23 5.3  The debtors shall file a report with the Court as to the status of their efforts to
24 liquidate their assets, not less frequently than annually, with the first such report to be filed by the
25 first anniversary of the Effective Date.

26 5.4  Neither the liquidation of Stonecast nor the liquidation of West Coast Specialty
27 Stone, or of the debtor's interest in Tolteca Enterprises, LLC are expected to produce significant
28 proceeds for Pinkston's creditors. Although West Coast has been a viable entity in the past, the

value of its assets would not exceed $25,000, and its liabilities (most of which are on guarantees of Stonecast's debts) far exceed this amount. The liquidation of Stonecast, according to its plan filed with the court, will produce some cash, but that cash will have to be apportioned amongst a substantial amount of claims by Stonecast's creditors, including Pinkston. West Coast's liabilities exceed the value of its assets, and the proceeds of liquidation of West Coast's assets will go to West Coast's creditors, leaving nothing for Pinkston. Likewise, unless market conditions improve substantially, sale of the Gilbert lot will not produce a large surplus over and above what is owed to the lienholder, Bank of America.

5.5 Those assets which are expected to produce significant proceeds for Pinkston's creditors, are (a) their interest in the Utah land, and (b) their shares in New Earth Systems. For example, if Pinkstons could (with court approval) sell their shares in New Earth Systems for $1.65 per share (the same price as was realized by Terry Benton for his shares in 2007), such a sale would produce $495,000 for their creditors. Pinkstons are making no forecasts that such a price will be realized in the near term, but with a strengthening of the investment climate and the attainment by New Earth of its forecasts, such a price is not a far stretch.

5.6 Other Assets

Pinkstons also own their own home, in which, as described above, they have no equity. They also own:

(a) a 2004 Ford Taurus, a 1999 Chrysler, and a 2000 Ford Excursion, the combined value of which is estimated at $10,000

(b) household furnishings and effects and personal effects – partly exempt, and of insignificant value to the estate

**VI. FEASABILITY**

Inasmuch as this is a liquidating plan, feasibility is not an issue.

**VII. LIQUIDATION ANALYSIS**

As noted, this is a liquidating Plan. Rather than proceeding with this Chapter 11 plan, the court could convert this case to a Chapter 7 case, and appoint a trustee, who would proceed to liquidate Pinkston's assets.

1 Pinkstons believe that creditors' interests are far better served by allowing Pinkstons to liquidate their assets, under court supervision. Each of the two assets which have the greatest potential for a meaningful return to creditors, can only be liquidated at other than fire sale prices, with the cooperation of persons who are associated with Pinkston. The half interest in the Utah land is best sold by a sale of that land, with the consent of the other owner. The only buyers for the New Earth Systems stock who would be willing to pay fair value for the potential of this company, would be persons familiar with the company's management, which includes Richard Pinkston. Thus, Pinkston believes that, given time, he can produce a considerably better result for creditors than could a chapter 7 trustee.

**VIII.   SOURCE OF PROJECTIONS**

All of the projections made in this disclosure statement have been furnished by the debtors.

**X.     LITIGATION**

The Pinkstons are involved in the following litigation, in state court:

1. Suit by Puget Sound Leasing against the debtors as guarantors of Stonecast, in King County, Washington Superior Court. This creditor obtained judgment against the Pinkstons, by default.

2. A suit by Axis Capital, a Stonecast and West Coast creditor, in Ventura County California Superior Court.

3. A suit by Bank of the West, a Stonecast and West Coast creditor, in Contra Costa County, California Superior Court.

4. Two suits against Richard Pinkston and other members of Stonecast, by Leaf Funding Inc., in Maricopa County Superior Court.

5. A suit by Wells Fargo Equipment Finance against West Coast Specialty Stone, Inc., and others in Salt Lake County Utah District Court.

Each of the adversaries are creditors of Stonecast, whose debts Pinkston guaranteed. All of them hold collateral in the form of equipment used by Stonecast. That equipment will be returned to these creditors under Stonecast's plan of reorganization, and the value of that equipment offset against the amounts owed by Stonecast and guaranteed by Pinkston's. The same applies to other

secured creditors of Stonecast, who receive a return of this collateral.

**XI.   VOTING**

Creditors holding allowed claims which are impaired, and parties in interest whose interests are impaired, are entitled to vote. Neither of Classes I or II are entitled to vote, as a matter of bankruptcy law.

Ballots will be sent to the known holders of approved claims and all disputed claims. Any claim not listed as approved, in Pinkston's bankruptcy schedules is deemed disputed and not approved. However, only the holders of allowed claims or allowed interests (or claims and interests which are deemed allowed or have been estimated by the Court) who are impaired are entitled to vote on the Plan. A claim which is not an approved claim is not an allowed claim unless and until the Court rules on the dispute and any appeals are finally determined. The holders of such disputed claims are not entitled to vote on the Plan unless they request that the Court, pursuant to Rule 3018, Federal Rules of Bankruptcy Procedure, temporarily allow their claims in appropriate amounts solely for the purpose of enabling the holders of such disputed claims to vote on the Plan, and the Court grants such request.

The forms of ballot for each of the classes entitled to vote on the Plan will be sent to you with a copy of the Court-approved Disclosure Statement and the Plan. Please read the ballot carefully. If you have any questions concerning voting procedures, you may contact Forsgren's attorney, J. Kent MacKinlay, at the address provided immediately below.

**YOU MUST RETURN YOUR BALLOTS TO:**

> J. Kent MacKinlay
> WARNOCK, MACKINLAY & CARMAN, P.L.L.C.
> 1019 S. Stapley Dr.
> Mesa, Arizona 85204
> (480) 898-9239

Even though a creditor may not choose to vote or may vote against the Plan, the creditor will be bound by the terms and treatments set forth in the Plan if the Plan is accepted by the requisite majorities in each Class of creditors and/or is confirmed by the Court. Creditors who fail to vote will not be counted in determining acceptance or rejection of the Plan. Allowance of a claim or interest

for voting purposes does not necessarily mean that the claim will be allowed or disallowed for purposes of distribution under the terms of the Plan. Any claim to which an objection has been or will be made will be allowed only for distribution after determination by the Court. Such determination may be made after the Plan is confirmed.

In order for the Plan to be deemed accepted by a class of creditors deemed impaired, creditors that hold at least two-thirds (2/3) in the dollar amount and more than one-half (½) in the total number of allowed claims of creditors in that class who vote on the Plan must accept the Plan. Under certain limited circumstances more fully described in 11 U.S.C. §1129(b), the Court may confirm a Plan notwithstanding the rejection thereof by more than 1/3 in amount or ½ in number of the creditors of any given class voting on the Plan. The debtor intends to seek confirmation under 11 U.S.C. §1129(b) in the event one or more classes of creditors or parties in interest rejects the Plan.

**XII. NOTICE OF DUAL REPRESENTATION** The debtors are represented by the law firm of Warnock, MacKinlay & Associates, P.L.L.C., in this matter. Said counsel hereby gives notice that it also represents Stonecast Walls, L.L.C., in the latter's bankruptcy. It is possible that such dual representation may give rise to a conflict of interest. Both the Pinkstons and Stonecast have waived any conflict of interest which the said law firm may have, arising out of this dual representation.

**XIII. DISCHARGE OF THE DEBTOR**

Upon confirmation of the Plan, the debtors will be discharged of all claims and liabilities arising prior to the filing of the bankruptcy petition, pursuant to 11 U.S.C. 1141, excepting for the obligations set forth in the Plan

DATED this 11th day of February, 2009

by  /s/ Richard Pinkston
        Richard Pinkston

by  /s/ Julianna Pinkston
        Julianna Pinkston

/s/ J. Kent MacKinlay, #007204

1 | J. Kent MacKinlay
  | Attorney for Debtor
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT "A"

NEW EARTH SYSTEMS, INC.
PROJECTED BALANCE SHEET